

FILED

NOV - 4 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 08-10255-B-7 |
| Jack Lee Heath and Bridget Heath, | DC No. UST-1 |
| Debtors. | |

**MEMORANDUM DECISION REGARDING UNITED STATES TRUSTEE'S MOTION FOR AN ORDER IMPOSING A FINE AND DISGORGEMENT PURSUANT TO 11 U.S.C. § 110**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Mark L. Pope, Esq., Assistant U.S. Trustee, appeared for the movant, Sara L. Kistler, Acting U.S. Trustee.

Respondent Barbara H. Reynolds appeared *in propria persona*.

Phillip Gillet, Esq., appeared for Jack Heath and Bridget Heath.

   Before the court is the United States Trustee's ("UST") motion for an order imposing a fine of $31,500 and disgorgement of fees totaling $1,100 (the "Motion"). The UST contends that respondent Barbara Reynolds ("Reynolds") acted as a "bankruptcy petition preparer" in connection with this bankruptcy case and failed to comply with numerous provisions of the law that regulate the activities of bankruptcy petition preparers, 11 U.S.C. § 110. Reynolds admits that she prepared the petition and other

documents filed in this case, but denies that she did so as a "bankruptcy petition preparer" within the meaning of the Bankruptcy Code. Because the court finds Reynolds' arguments to be unpersuasive, the UST's Motion will be granted.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 110[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background.**

Reynolds is a paralegal. She is not an attorney. The Debtors Jack & Bridget Heath (the "Debtors") had used Reynolds' "paralegal services" for several years prior to the bankruptcy. She prepared numerous documents and advised and assisted Jack Heath in his unsuccessful effort to prosecute some probate litigation in the state court. Bridget Heath ("Ms. Heath") testified that the Debtors paid Reynolds more than $7,000 at various times for her services in connection with the state court proceedings. The Debtors' bankruptcy schedules did not disclose any of those payments to Reynolds, and there was no record to show how Reynolds accounted for and billed those services.

By late 2007, it became apparent that the Debtors would need to seek bankruptcy protection. Ms. Heath testified that they had paid so much money to Reynolds, they were unable to keep current with their other bills and a large judgment had been entered against Jack Heath in the probate litigation. It is not clear whether Reynolds advised the Debtors to file bankruptcy, but she did agree to prepare and file all of the required documents.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

Reynolds did not quote a fee for doing the bankruptcy work, but she told the Debtors that they would need to work out a payment plan later because she was "not going to do all this work for nothing."

The Debtors' voluntary chapter 7 petition was filed on January 16, 2008, *in propria persona.* The case was converted to chapter 13 on February 8, 2008, reconverted to chapter 7 on May 8, 2008, after the chapter 13 trustee filed a motion to dismiss, and was subsequently dismissed.[2] Reynolds assisted the Debtors and gave them legal advice with regard to the bankruptcy process and the preparation of their documents. She prepared and filed the petition, schedules, and virtually every other document filed by the Debtors. Ms. Heath testified that Reynolds even signed the documents using the Debtors' names and then instructed the Debtors not to disclose that she had been involved in any way.[3]

Reynolds is familiar with the Bankruptcy Code and bankruptcy procedure and has performed services as a "petition preparer" in several other bankruptcy cases. Reynolds contends that in each of those other cases, she fully disclosed her involvement and complied with § 110. However in this case, Reynolds chose not to disclose that she was involved. She did not disclose on any of the Debtors' documents her name, address, or

---

[2] On July 10, 2008, the UST obtained a judgment in a related adversary proceeding denying the Debtors' discharge pursuant to § 727(a)(8). The Debtors had received a chapter 7 discharge in a prior case less than eight years before filing this case. This bankruptcy case was dismissed on August 26, 2008, after the Debtors failed to attend the § 341 meeting of creditors. However, the court specifically retained jurisdiction over this contested matter.

[3] Ms. Heath testified that Reynolds gave them legal opinions and advice over the course of the probate proceeding. It appears that Reynolds continued to provide legal advice in connection with the bankruptcy. Reynolds prepared the schedules and all of the bankruptcy documents. There was no evidence to show that the Debtors had any input or control over the preparation of those documents or their contents. Reynolds prepared the Debtors' chapter 13 plan and a motion to value their automobile and she sent the Debtors several communications advising them what they needed to do once the petition was filed. Reynolds essentially gave legal advice when she decided it was proper to sign the documents on the Debtors' behalf. She also gave legal advice when she decided it was not necessary to comply with § 110.

social security number as required of petition preparers by § 110. The Debtors' schedules do not disclose that the Debtors had paid, or even agreed to pay any compensation to Reynolds in connection with this bankruptcy case, a further requirement of § 110.

Ms. Heath testified, based on review of her checkbook ledger, that she delivered three payments to Reynolds totaling $1,100 after the bankruptcy petition was filed.[4] She gave Reynolds $400 in cash on or about February 8, 2008, after Reynolds told her that she needed some money for preparing documents. Ms. Heath delivered two more cash payments totaling $400 to Reynolds on or about March 10, 2008, after Reynolds called and asked for more money. Ms. Heath delivered a third cash payment of $300 on or about March 25, 2008. She did not remember any specific conversation relating to that payment. All three of the cash payments were noted in Ms. Heath's checkbook ledger. Reynolds denies categorically that she received any of the payments which Ms. Heath testified to and contends that she did all of the work in this bankruptcy case without any consideration.

**Issues Presented.**

There is no dispute here that Reynolds prepared the petition, schedules, and all of the other documents filed on behalf of the Debtors in this case. The central issue is whether Reynolds received any compensation for having done so. If so, then she was a "bankruptcy petition preparer" subject to the limitations and mandates of § 110. The UST contends that Reynolds received approximately $1,100 for services rendered, including document preparation, in connection with this bankruptcy case, which should have been disclosed along with the other relevant information required by § 110. The UST requests an order imposing a fine totaling $31,500 and disgorgement of the postpetition money paid to Reynolds in the amount of $1,100. Reynolds denies that she was paid any money by the Debtors in connection with this bankruptcy case. Reynolds further denies that she

---

[4]The Debtors' checkbook ledger was not admitted into evidence. Ms. Heath referred to the ledger to refresh her recollection and testified directly as to each payment.

received any money from the Debtors after commencement of the case for any purpose, bankruptcy or otherwise. Based thereon, Reynolds contends that she did not act as a "bankruptcy petition preparer," and was not required to comply with § 110.

**Applicable Law.**

Bankruptcy Code § 110 defines a "bankruptcy petition preparer" as "a person, other than an attorney for the debtor . . . who prepares *for compensation* a document for filing" in a United States bankruptcy court. § 110(a)(1) (emphasis added). The term "document for filing" means "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court . . . in connection with a case under [Title 11]." § 110(a)(2).

An individual petition preparer is required by § 110 to, *inter alia*, "sign the document and print on the document the preparer's name and address." § 110(b)(1). Before preparing any document or accepting any fees from a debtor, a petition preparer must "provide to the debtor a written notice which shall be on an official form" which informs the debtor that the petition preparer "is not an attorney and may not practice law or give legal advice." That notice must "be signed by the debtor and, under penalty of perjury, by the bankruptcy petition preparer," and must be filed with the other documents. § 110(b)(2)(A) & (B). A petition preparer must file a declaration under penalty of perjury "disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case. . . ." § 110(h)(2). An individual petition preparer must place an "identifying number" on each document she prepares. § 110(c)(1). A petition preparer is statutorily prohibited from executing any document on behalf of a debtor (§ 110(e)(1)) and may not give legal advice. § 110(e)(2).

A petition preparer can be ordered to disgorge all fees charged if she fails to comply with the above-referenced provisions of § 110. § 110(h)(3)(B). A petition preparer is also subject to fines up to $500 for each such failure to comply with § 110. § 110(l)(1). The fine shall be tripled if the petition preparer failed to disclose her identity on the documents. § 110(1)(2)(D).

## Analysis.

Congress added § 110 to the Bankruptcy Code in 1994, "as a congressional response to perceived abuse of the bankruptcy laws by so-called 'typing services' which had proliferated especially in the Central District of California." *In re Guttierez*, 248 B.R. 287, 292 (Bankr. W.D. Texas 2000). The legislative intent behind this new law was stated to "control the proliferation of 'bankruptcy typing mills' which were said to have 'unfairly preyed upon' people who 'do not . . . understand the bankruptcy system.'" and to "protect individual debtors from 'bankruptcy petition preparers who negligently or fraudulently prepare bankruptcy petitions.'" *Id.*, citations omitted.

Ms. Heath testified that she paid Reynolds $1,100 for services rendered after the petition was filed. Reynolds contends that Ms. Heath is not telling the truth. It is the function of the trial court to determine the facts. In doing so, this court must review the physical evidence, consider the testimony and credibility of the witnesses, resolve any conflicts or inconsistencies in the evidence, and make findings of fact and conclusions of law which are supported by the record.

Facts which cannot be determined from direct testimony or physical evidence may be determined by inference. An inference is a fact which the court may find as the logical result of other facts. It is a "deduction of fact that may be logically and reasonably drawn from another fact or group of facts found or otherwise established in an action." *Giacalone v. Malget (In re Malget)*, 165 B.R. 933, 937 (Bankr. S.D. Cal. 1994), citing *Cal.Ev.Code* § 600(b) (West 1994). Inferences are an indispensable tool of logical analysis and the finder of fact may draw reasonable inferences that are supported by evidence of sufficient probative value to form a rational basis for the court's conclusion. The inference "must be drawn by reason from the facts on which it purports to rest." *In re Malget*, 165 B.R. at 937, quoting *Dreijer v. Girod Motor Company*, 294 F.2d 549, 554 (5th Cir. 1961).

Prior to preparing the bankruptcy schedules, Reynolds had done a substantial amount of "paralegal" work for Jack Heath. The Debtors had paid Reynolds more than

$7,000 for those services at various times. When it became apparent that the Debtors needed to seek bankruptcy protection, Reynolds agreed to prepare the petition and related documents, but she informed the Debtors that she would not do "all the work for nothing." Reynolds was an experienced paralegal. She made her living by providing services to people who needed legal help. The fact that Reynolds did the legal work in this case gives rise to a rebuttable presumption that she did so for compensation. Reynolds offered no explanation as to why she would agree to do the work in this case "for free." As a matter of law, Reynolds was barred by the automatic stay from demanding additional compensation for work she had already done in connection with the probate proceeding. § 362(a). In the court's view, it is illogical that Reynolds would agree to provide significant legal services for the prosecution of a new bankruptcy case without any intention of being compensated for those services.

The Debtors paid Reynolds thousands of dollars in cash over a period of several years for all of the work she had done for Jack Heath. The postpetition payments relevant to this contested matter were reflected in the Debtors' checkbook ledger as "ATM withdrawals." Reynolds denies that she received any postpetition payments from the Debtors, in cash or otherwise, but she failed to produce any evidence of billing and payment records to show how her services were normally documented and billed to the Debtors. Based on the absence of proper business records, the court can infer that Reynolds did not maintain billing records for the Debtors. The absence of billing records tends to corroborate Ms. Heath's testimony that she did make the postpetition cash payments to Reynolds. Since the Debtors paid Reynolds in cash after the bankruptcy was filed, the court can infer that they also paid her in cash for her prepetition services.

Reynolds produced copies of petitions and documents from other bankruptcy cases she had prepared to show that she did understand the law with regard to bankruptcy petition preparers, and had complied with § 110 in those cases. However, she declined to produce any records to show how the services she provided to other clients were billed and accounted for. From this, the court can infer that Reynolds did much of her work

7

without keeping formal records and that "cash" compensation was a regular part of her general business practice. If Reynolds did not keep any records to show what she did, or how and when she was paid in her general practice, then it is difficult to believe her testimony wherein she denies receiving the specific cash payments described by Ms. Heath. When the court finds one witness' testimony to be more credible than another's, it can afford the first witness' testimony greater weight. *In re Lona*, 393 B.R. 1, 11 (Bankr. N.D. Cal. 2008). Where the testimony of a witness is not believed, the trier of fact may simply disregard it. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S., 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

**Conclusion.**

Based on the foregoing, the court finds and concludes that Reynolds did receive compensation of at least $1,100 for preparing documents in this bankruptcy case and she did act in the capacity of a "bankruptcy petition preparer" within the meaning of § 110. In addition, Reynolds gave the Debtors legal advice, signed the pleadings on behalf of the Debtors, failed to provide and file the required notice, and failed to disclose in any way her involvement in this case. Indeed, she instructed the Debtors to conceal her involvement. The U.S. Trustee's Motion for an order imposing a fine and disgorgement of fees is well taken and will be granted. The UST shall submit a proposed order which provides for the disgorgement of $1,100 and which sets forth the calculations for a proper fine imposed pursuant to § 110.

Dated: November ____, 2008

W. Richard Lee
United States Bankruptcy Judge

8